IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

SEAN MICHAEL S.,

Plaintiff,

v.                                          Civil Action No.
                                            5:20-CV-0942 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

─────────────────────────────────

<u>APPEARANCES</u>:                          <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

LAW OFFICES OF                              JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC                        KENNETH R. HILLER, ESQ.
6000 North Bailey Ave., Suite 1A
Amherst, New York 14226

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.                      KEVIN MICHAEL PARRINGTON, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which he has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in April of 1984, and is currently thirty-seven years of age.  He was thirty-three years old at the time of his application for benefits in August of 2017.  Plaintiff stands five-foot and six inches in height, and weighs approximately one hundred and sixty-six pounds. Plaintiff resides in a townhouse in Syracuse, New York with his mother and father.

Plaintiff has a ninth grade education and has not received a GED, although he took a class at Onondaga Community College related to

---

[1]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

cooking and other activities in 2003.  He stopped going to school because of the effects of his diabetes, and he has tried to achieve his GED but reports that his mind "technically isn't there for a GED" due to his level of learning.  Plaintiff has never worked.  He does not have a driver's license and does not drive.

Physically, plaintiff alleges that he suffers from diabetes, neuropathy in his feet, retinopathy in his eyes, thyroid issues, and "paralysis" of his left upper and lower extremities.  Plaintiff has undergone multiple laser surgeries on his eyes related to the effects of his diabetic retinopathy.

During the relevant period, plaintiff treated for his conditions with Upstate University Hospital, the Joslin Diabetes Center, and Dr. Joseph Naas.  He has been prescribed several medications over time including, though not limited to, various types of insulin, losartan potassium, atorvastatin, and vitamin D.  He also has a meter to test his blood glucose levels.

Plaintiff has reported that he likes to read books – particularly about science – and uses his computer to look up information on the internet, play video games and socialize.  He also watches television.  Plaintiff helps with household chores, with appropriate breaks, including cooking, cleaning, laundry, taking care of his dog, and shopping.  He has difficulty

using his left hand due to "paralysis."  He reported that he goes to see friends multiple times each week to have coffee, watch television, or play board games, and he socializes with others while playing online video games.  Plaintiff does not require any help to care for himself or get out of bed, but he cannot lift more than forty-five pounds, cannot stand for longer than thirty minutes, cannot walk for longer than fifteen minutes or two or three blocks, has to stand for a few minutes before being able to walk if he remains seated for long periods of time, and requires glasses to see at a distance.

II.     PROCEDURAL HISTORY

        A.      Proceedings Before the Agency

        Plaintiff applied for SSI payments under Title XVI of the Social Security Act on August 2, 2017.  In support of that application, he alleged a disability onset date of October 31, 1992, and claimed to be disabled based on Type 1 diabetes, neuropathy, retinopathy in his left eye, left side paralysis, and a herniated brain.

        A hearing was conducted on April 4, 2019, by ALJ John P. Ramos, to address plaintiff's application.  ALJ Ramos held a supplemental hearing on August 13, 2019, at which testimony was taken from medical expert Steven Golub, M.D., and a vocational expert.  Following that second hearing, ALJ

4

Ramos issued an unfavorable decision on August 27, 2019.  That opinion

became a final determination of the agency on June 18, 2020, when the

Social Security Appeals Council ("Appeals Council") denied plaintiff's

request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Ramos applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff did not

engage in substantial gainful activity during the relevant period.  At step

two, ALJ Ramos found that plaintiff suffers from severe impairments that

impose more than minimal limitations on his ability to perform basic work

functions, including obesity and diabetes mellitus with associated

retinopathy, neuropathy, and nephropathy.

At step three, ALJ Ramos examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed

conditions, specifically considering Listings 2.02, 2.03., 2.04, 6.00, 9.00(5),

and 11.14.

ALJ Ramos next surveyed the available record evidence and

concluded that plaintiff retains the residual functional capacity ("RFC") to

5

perform "less than a full range of light or sedentary work,"[2] as defined by

the controlling regulations, with the following refinements:

> the claimant can lift and/or carry 20 pounds occasionally and ten pounds frequently, sit for a total of six hours, and stand and/or walk a total of three hours in one-hour intervals in an eight-hour workday. He can occasionally finger, feel, and handle with both upper extremities and has no reaching limitations. He can also frequently bend, kneel, crouch, [ ], stoop, and balance. The claimant should not work at elevated heights and should not be exposed to extremes of temperature or vibration. He also should

---

[2]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

> Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

not perform work that requires fine binocular vision, but can recognize and avoid usual hazards in the work place.

At step four, ALJ Ramos concluded that plaintiff has no past relevant work.  Proceeding to step five, the ALJ consulted a vocational expert regarding how plaintiff's limitations impacted the occupations he could perform within the range of light and sedentary work specified above, and concluded based on the vocational expert's testimony that plaintiff remained able to perform work as a call-out operator – of which there are 8,500 jobs in the national economy – and as a surveillance system monitor – of which there are 5,200 jobs in the national economy.  Based upon these findings, ALJ Ramos concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on August 17, 2020.[3]  In support of his challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ erred in failing to incorporate the full range of vision limitations opined by non-examining physician Dr. I. Seok, and in

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

relying more heavily on the opinion of medical expert Dr. Steven Golub, given that Dr. Golub is not a specialist in ophthalmology, (2) the ALJ erred in failing to weigh the opinion of Dr. Astrid Ranaldi, (3) the ALJ failed to properly evaluate and weigh the opinion from treating podiatrist Dr. Joseph Naas in that the ALJ failed to consider how that opinion is supported by and consistent with the rest of the evidence and failed to consider his significant treatment relationship with the plaintiff, (4) the ALJ erred in assessing plaintiff's subjective allegations of symptoms and limitations, and (5) the number of jobs to which the vocational expert testified plaintiff would be able to perform with the limitations in the RFC are not sufficiently significant to support the ALJ's step five finding.  Dkt. No. 14.

Oral argument was conducted in this matter, by telephone, on December 8, 2021, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

   The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

### B.   Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C. Analysis

1. ALJ Ramos' Consideration of the Opinion Evidence

As an initial matter, I recognize that, based on the filing date of plaintiff's application, the new regulations regarding the weighing of medical opinion evidence apply in this case. Under these new regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider those medical opinions using the relevant factors, particularly considering the supportability and consistency of those medical opinions. *Id.* The ALJ

12

must articulate how persuasive he or she found each medical opinion and must explain how he or she considered the supportability and consistency of those medical opinions; the ALJ may also – but is not required to – explain how he or she considered the other relevant factors as appropriate in each case.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The relevant factors are (1) supportability, (2) consistency, (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treating relationship, the extent of the treating relationship, and whether it was merely an examining relationship, (4) the specialization, if any, of the source, and (5) other factors that tend to support or contradict the medical opinion.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Under the new regulations, acceptable medical sources include physicians, psychologists, optometrists, podiatrists, advanced practice registered nurses, and physician assistants.  20 C.F.R. §§ 404.1502(a), 416.902(a).

a.   Dr. Seok

Among the medical opinions of record is a report by a non-examining agency consultant, Dr. I. Seok.  Administrative Transcript ("AT") at 82-93.[4]

---

[4]      The Administrative Transcript is included in the court's records as Docket Number 10, and will be cited as "AT __."

Plaintiff argues that the ALJ failed to explain why he chose to reject greater limitations related to plaintiff's visual functional abilities that were contained in Dr. Seok's opinion, including failing to articulate why greater limitations were unsupported or inconsistent with the record.  Dkt. No. 14, at 11-16.

Dr. Seok stated in the "medical evaluation" section of his initial disability determination explanation that, based upon the consultative examination, plaintiff's vision is not at the level of a listed impairment, but would "preclude tasks which require good bilateral vision," instructing the reader to "[s]ee narrative in proposed RFC."  AT 86.   In the RFC section of that explanation, he found that plaintiff is bilaterally "limited" in his near acuity, far acuity, and field of vision.  AT 90.  In explaining that portion of his opinion, Dr. Seok noted the results of a vision examination of the plaintiff on October 18, 2017, which showed corrected visual acuity of 20/50 in the right eye, 20/40 in the left eye, and 20/40 bilaterally with bilateral dot/blot hemorrhages, blood vessel attenuation, and constriction of the peripheral visual fields bilaterally.  *Id.*  The ALJ included in the RFC a limitation that plaintiff cannot perform work that requires fine binocular vision, but noted that he can recognize and avoid usual hazards in the workplace.  AT 16.

Plaintiff's argument is premised on the assumption that the opinion that he is "limited" in near acuity, far acuity, and field of vision represents a

14

greater limitation than what was included in the RFC.  Significantly, however, Dr. Seok's opinion did not specify the *degree* to which near acuity, far acuity, and field of vision are limited, instead merely noting that they are limited.  Dr. Seok appears to indicate that plaintiff's vision impairment would overall preclude tasks requiring good bilateral vision, which the ALJ evidently interpreted as accounting for those opined limitations in near acuity, far acuity, and field of vision.  Although Dr. Seok's opinion is somewhat ambiguous in terms of what functional limitations he intended to include in his opinion, I find that his opinion provides sufficient information such that the ALJ's interpretation of his opinion was reasonable.

Dr. Seok's narrative discusses the findings of consultative examiner Dr. Rinaldi as the basis for his finding that plaintiff is limited in near acuity, far acuity, and field of vision.  AT 90.  As was discussed previously, Dr. Seok stated in the "medical evaluation" section of the report, which was related to Dr. Rinaldi's examination, that the consultative examination findings indicated that plaintiff has a vision impairment that is not at the level of a listed impairment, but which would preclude tasks which require good bilateral vision.  AT 86.  Although plaintiff maintained at oral argument that this "medical evaluation" was merely a recitation of Dr. Rinaldi's

findings and cannot be considered part of Dr. Seok's opinion, his argument ignores the fact that Dr. Rinaldi did not anywhere in her examination report make any statement to the effect that plaintiff's vision impairment was not at the level of a listed impairment and would preclude tasks which require good bilateral vision.  AT 434-35.  Indeed, Dr. Rinaldi's report contains no functional assessment, but rather represents a documentation of plaintiff's reports, his history, and the objective findings on the vision examination. *Id.*  It is therefore clear, despite the ambiguous placement of the statement that plaintiff is precluded from tasks which require good bilateral vision, that such statement was made by Dr. Seok – based on Dr. Rinaldi's findings – and not Dr. Rinaldi.  Given that Dr. Seok's narrative explaining the findings he later includes in the RFC section related to plaintiff's visual limitations also relies on Dr. Rinaldi's examination findings, it was not unreasonable for the ALJ to consider the relevant statements in the "medical evaluation" section as being part of Dr. Seok's opinion, and indeed an elaboration on the admittedly vague functional limitations in the RFC section of the report. Because plaintiff has failed to point to any evidence that would suggest that the ALJ's interpretation of this opinion was unreasonable, it would be beyond the scope of my authority under the governing standard of review to substitute a contrary interpretation.  *See Bush v. Comm'r of Soc. Sec.*,

16-CV-1007, 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (Suddaby, C.J.) (noting that, "where evidence is subject to more than one reasonable interpretation, this Court is bound to uphold the ALJ's interpretation") (citing *Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) (McAvoy, J.)); *Bishop o/b/o K.M.B. v. Comm'r of Soc. Sec.*, 16-CV-1190, 2017 WL 4512163, at *6 (N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) (noting that a reviewing court must accept an ALJ's interpretation of the evidence if it is reasonable).

I note, moreover, that the ALJ specifically found that further visual limitations beyond those which were incorporated into the RFC were not warranted given plaintiff's own acknowledgement that he is able to read and use a computer.  AT 19.  Plaintiff argues that this is insufficient because "there was no evidence that Plaintiff read or used a computer more than occasionally."  Dkt. No. 14, at 15-16.  However, contrary to plaintiff's assertion, the record clearly shows that he did in fact engage in those types of activities on a regular basis.  At the first hearing in April 2019, plaintiff testified that he wears glasses for distance vision, and his activities include reading books about science and using the computer.  AT 51, 53.  In his function report, he indicated that he plays online computer games every day and enjoys "sitting quietly reading a book."  AT 247.  He

does not report at any point in the medical or other records that his abilities to do these things have decreased over time.

The medical evidence further supports that plaintiff's corrected vision does not impose greater limitations.  Although his reported corrected visual acuities vary throughout the record, they are consistently better than the corrected visual acuities from Dr. Ranaldi's examination that were relied on by Dr. Seok: 20/20 on October 26, 2017; 20/25 in the right eye and 20/20-1 in the left eye on October 31, 2017; 20/20 in the right eye and 20/20- in the left eye on January 23, 2018; 20/20 bilaterally on March 27, 2018; 20/20 in the right eye and 20/25 in the left eye on April 12, 2018; 20/20 in the right eye and 20/25-1 in the left eye on April 24, 2018; 20/20-2 in the right eye and 20/25-2 in the left eye on May 17, 2018; 20/20 in the right eye and "20/20 slow" in the left eye on June 14, 2018; 20/25+2 in the right eye and 20/20-3 in the left eye on October 18, 2018; 20/25+- in the right eye and 20/25+- in the left eye on January 29, 2019; and 20/25-2 in the right eye and 20/25-2 in the left eye on May 28, 2019.  AT 458, 474, 478, 501, 506, 519, 525, 544, 556, 615.  Although plaintiff occasionally reported flashes of lines or floaters in his vision, these did not appear to impact his visual functional abilities in any material way.  AT 488, 517, 554.

Additionally, it does not appear from the record that plaintiff reported

experiencing significant difficulties with his vision on a daily basis.  At the

hearing, he testified merely that he cannot see far away, so he has to wear

glasses.  AT 51.  As was already noted, he also reported activities requiring

use of his eyes, such as playing video games daily, reading, and watching

television and movies.  AT 53, 247.  Plaintiff's medical records also do not

generally include reports by plaintiff to providers indicating significant

functional limitations related to his vision.  As a result, plaintiff's own

subjective reports do not suggest limitations greater than those included in

the RFC based on the ALJ's interpretation of Dr. Seok's opinion.

Simply stated, plaintiff has not adduced any evidence which shows

that his vision is more significantly limited than was accounted for by the

ALJ in the RFC.  Accordingly, I reject plaintiff's argument that the ALJ erred

in weighing the opinion of Dr. Seok or in assessing plaintiff's visual

limitations.[5]

---

[5]      During oral argument, plaintiff argued that the ALJ also erred in failing to
recontact Dr. Seok for clarification of the extent to which plaintiff's near acuity, far acuity,
and field of vision were limited, and whether the notation that plaintiff was precluded
from work requiring good bilateral vision was part of his opinion and/or accounted for
the other opined limitations.  However, plaintiff did not make any such argument in his
brief.  This argument is therefore deemed waived. *See Gao v. Barr*, 968 F.3d 137. 141
(2d Cir. 2020) (noting that "[i]t is well established that arguments raised for the first time
at oral argument are deemed 'waived'").  Even assuming the argument was properly
raised, it nonetheless would be rejected, because the record was not insufficient to
permit the ALJ to make a determination of disability, given that the record contained a
consultative examination specifically related to plaintiff's vision as well as ample
longitudinal treatment records from which the ALJ could interpret Dr. Seok's opinion.
*See* 20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2) (outlining the steps the ALJ may

b.   <u>Dr. Ranaldi</u>

Dr. Astrid Rinaldi, O.D., of Eyecare of CNY, conducted a consultative examination of the plaintiff's vision on October 18, 2017.  *See* AT 434-37. Plaintiff argues that the ALJ failed to weigh the opinion of Dr. Rinaldi related to plaintiff's visual functional abilities.  Dkt. No. 14, at 13. Significantly, however, a review of Dr. Ranaldi's examination note shows that she did not include any functional opinion based on her examination. AT 434-37.  Rather, the report merely recites her impression, essentially reciting her diagnoses of plaintiff's vision impairments.  It is well-established, however, that mere diagnosis of an impairment is insufficient to establish disability; it is the resulting limitations that properly inform the disability determination.  *See Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (finding that "[m]ere diagnosis . . . without a finding as to severity of symptoms and limitations does not mandate a finding of disability"); *Tammie S. v. Berryhill*, 18-CV-0174, 2019 WL 859263, at *9 (N.D.N.Y. Feb. 22, 2019) (Hummel, M.J.) (noting that "[t]he mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe").

---

take if the evidence is consistent but insufficient to determine whether the claimant is disabled).

Because Dr. Rinaldi did not provide an opinion regarding plaintiff's functioning, there was no requirement for the ALJ to specifically afford weight to any of her findings.  To the extent that plaintiff's argument can be construed as asserting that the ALJ erred in failing to specifically mention Dr. Rinaldi's examination findings, the ALJ is not required to recite every piece of medical or other evidence in his or her decision in order to prove it was considered.  *See Renalda R. v. Comm'r of Soc. Sec.*, 20-CV-0915, 2021 WL 4458821, at *5 (N.D.N.Y. Sept. 29, 2021) (Dancks, M.J.) (noting that "an ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision") (alterations in original) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)).

I therefore reject plaintiff's arguments regarding Dr. Rinaldi.

c.    Dr. Golub

During the supplemental hearing conducted by ALJ Ramos, testimony was elicited from Dr. Steven Golub, who is board certified in internal medicine and geriatrics, regarding plaintiff's medical status. Plaintiff does not appear to challenge the ALJ's decision to afford the greatest weight to Dr. Golub's opinion except as to the opined visual limitations, arguing that that portion of the opinion should be rejected

because vision impairments were outside of Dr. Golub's specialty area and he admitted he was unfamiliar with ophthalmologic terms.  Dkt. No. 14, at 14.  However, it does not appear that Dr. Golub offered any significant opinion regarding functional limitations related to plaintiff's visual impairments, other than to note that visual acuity findings he saw in the record appeared to be normal.  AT 69.  Given that the ALJ explicitly adopted the vision limitations from Dr. Seok's opinion, rather than Dr. Golub's opinion, it is clear that the ALJ did not afford greater weight to Dr. Golub's opinion on the specific matter of plaintiff's visual impairment, regardless of whether he found it to be more persuasive in terms of the other physical limitations.  AT 17-19.

The ALJ generally found the opinions of both Dr. Seok, which included an assessment of exertional, postural, and other limitations in addition to the visual limitations, and Dr. Golub to be persuasive, although he noted that he found Dr. Golub's opinion more persuasive because he had the opportunity to review more of plaintiff's records than did Dr. Seok. AT 17-18.

Dr. Golub opined that plaintiff is capable of lifting and carrying ten pounds frequently and twenty pounds occasionally, handling and feeling occasionally, and frequently performing postural activities, but should have

no exposure to unprotected heights, moving mechanical parts, extremes in temperature, and coarse or close vibration.  AT 67.  He also opined that plaintiff has no limitation in his ability to sit, and can stand and walk for three or four hours, with standing and walking broken up into periods of standing or walking for an hour at a time.  AT 67-68.[6]  Because plaintiff does not specifically challenge the weight afforded to Dr. Golub's opinion as to these limitations, other than to assert that the ALJ should have relied to a greater extent on the opinion of Dr. Naas – which will be discussed below – and because the ALJ explained that he relied on that opinion due to its consistency with the evidence as a whole, I find no error in the ALJ's consideration of Dr. Golub's opinion.

Dr. Golub's opinion is supported by and consistent with the evidence in the record.  Although treatment notes from Dr. Naas consistently noted diminished vibratory sensation in plaintiff's forefeet bilaterally, treatment notes for his diabetes from Upstate University Hospital consistently noted that sensation to monofilament touch was present on examinations. *Compare* AT 293, 590-93, 596 *with* AT 484, 513, 531-32, 550-51, 623.

---

[6]     By contrast, Dr. Seok opined that plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours total, sit for six hours total, frequently climb ramps and stairs and balance, occasionally climb ladders, ropes and scaffolds, and must avoid concentrated exposure to vibration and even moderate exposure to hazards.  AT 89-91.  As a result, Dr. Golub's opinion is, by and large, more restrictive than Dr. Seok's opinion.

Treatment notes from Upstate University Hospital also generally recorded normal examinations with normal gait and no foot deformity, tenderness or edema, although on two occasions he was observed to have residual left-sided weakness in his left arm and leg rated at 3-4/5.  AT 453, 470, 484, 497, 513, 531-32, 538, 550-51, 602, 623.  Consultative examiner Dr. Ganesh observed during her examination that plaintiff could not walk on his heels without difficulty or squat fully, but that he had a normal gait, could walk on his toes without difficulty, needed no help with getting on or off either the exam table or a chair, and had no sensory or strength deficit in his lower or upper extremities.  AT 423-24.

Based on the foregoing, I reject plaintiff's argument that the ALJ erred when weighing Dr. Golub's opinion.

### d.   Dr. Naas

Lastly, plaintiff argues that the ALJ failed to properly evaluate the opinion from treating podiatrist Dr. Joseph Naas, DPM, in that he failed to consider how that opinion was consistent with and supported by the record and failed to compare that opinion with the findings in the treatment notes. Dkt. No. 14, at 16-18.

Dr. Naas completed a medical source statement form in which he opined that plaintiff is capable of sitting for more than two hours at a time

and for at least six hours total, standing thirty minutes at one time and standing or walking for less than two hours total, lifting and carrying up ten pounds rarely, rarely twisting, stooping, crouching, squatting, and climbing stairs, never climbing ladders, and frequently using his hands, fingers, and arms; he requires the ability to shift positions at will, take unscheduled breaks once per day for fifteen to thirty minutes, and elevate his legs to heart level for twenty-five percent of the workday.  AT 593-95.  He also opined that plaintiff is capable of only low-stress jobs, would be absent one day per month on average, and would occasionally experience symptoms severe enough to interfere with his attention and concentration to perform simple work tasks.  *Id.*  The ALJ found that Dr. Naas' opinion was "less persuasive" than that of Dr. Golub because the it was inconsistent with the other medical opinions of record, was not supported by the medical evidence, and was inconsistent with plaintiff's own reported activities and abilities, including that he can shower and dress himself, cook, do laundry, shop, care for pets, use his computer, do light housework with breaks, take walks around the neighborhood, socialize with friends, prepare meals, assist in the care of his father, and watch television.  AT 18-19.

Plaintiff is therefore incorrect that the ALJ failed to adequately consider the consistency and supportability of Dr. Naas' opinion, as

required by the regulations, and his argument that the evidence is inconsistent with the ALJ's finding is essentially a request for me to reweigh the evidence considered by the ALJ.  After reviewing all of the evidence in the record, I find that the ALJ's determination that Dr. Naas' opinion was not consistent with or supported by the evidence of record to be supported by substantial evidence, and should not be disturbed.  Notably, the weight afforded to the opinions of Dr. Seok and Dr. Golub – which, as was already discussed, was proper – provide support for the ALJ's finding that Dr. Naas' opinion was not consistent with the record as a whole, along with the medical evidence that was already discussed which showed few observable limitations on plaintiff's ability to walk and stand in particular. Moreover, under the new regulations, the ALJ was not required to explicitly consider the treatment relationship between plaintiff and Dr. Naas because treating physicians are no longer entitled to special deference, although the ALJ did note that Dr. Naas was "[plaintiff's] podiatrist" and therefore recognized him as a treating source.  AT 18.

Because it is clear that the ALJ considered whether Dr. Naas' opinion was consistent with and supported by the record as required by the regulations, I reject plaintiff's arguments regarding that opinion.

2.    The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ erred in his assessment of plaintiff's subjective reports of symptoms and functioning, claiming that the ALJ was not permitted to merely consider whether those reports were consistent or not with his own RFC findings, and further contending that he did not discuss any of the objective evidence that supported his finding or apply the required two-step process for assessing subjective complaints.  Dkt. No. 14, at 18-20.  Plaintiff also argues that the ALJ failed to appropriately consider the fact that he underwent multiple laser eye surgeries and treatment with multiple specialists in an effort to find relief from his symptoms.  *Id.* at 20-21.

Undeniably, an ALJ must take into account subjective complaints in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  However, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  When such testimony is consistent with and supported by objective clinical evidence

27

demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such symptoms, it is entitled to considerable weight.[7]   20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p. If the claimant's testimony concerning the intensity, persistence or limiting effects associated with his or her pain or other symptoms is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including (1) daily activities, (2) location, duration, frequency and intensity of symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of any medications taken, (5) other treatment received, and (6) other measures taken to relieve symptoms.   20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing

---

[7]     In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 432(d)(5)(A).

*Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, so long as it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In this case, the ALJ did not merely assess whether plaintiff's subjective reports were inconsistent with his RFC finding, and, contrary to plaintiff's argument, did undertake the required analysis and consider relevant factors related to assessing subjective complaints.  The ALJ specifically noted that plaintiff's reports were not consistent with the medical evidence or the other evidence of record, were not consistent with reported daily activities, and were not consistent with the lack of evidence

indicating that plaintiff missed or arrived late for appointments.  AT 19.

As was discussed above, the majority of the medical treatment evidence in the record fails to document objective findings that are consistent with the level of limitation plaintiff alleges. The most limiting observations are diminished vibratory sensation in the bilateral forefeet with some hammertoe deformity, but even Dr. Naas notes in those same examination reports that diabetic shoes and inserts were helping with plaintiff's foot symptoms.  AT 294, 592.  Other treatment notes from Upstate University Hospital showed intact monofilament sensation in his feet and no impact on his gait.  AT 484, 497, 513, 531-32, 538, 550-51, 602, 623.  As was already discussed previously, the ALJ's failure to discuss the objective findings in detail is not error, as it is clear from the ALJ's decision that he did indeed consider all of that evidence when rendering his decision.  *See Renalda R.*, 2021 WL 4458821, at *5.

These objective findings are consistent with plaintiff's reported activities of daily living that indicate greater functional capacity than he otherwise alleges.  On June 13, 2019, plaintiff reported to a physician's assistant at Upstate University Hospital that he engages in intermittent exercise by doing walking or performing yard work.  AT 620.  He reported to Dr. Ganesh that he can cook, do laundry, shop, shower, and dress.  AT

423.  He similarly reported to Dr. Shapiro that he can independently dress, bathe and groom, cook and prepare food, do general cleaning with frequent breaks, do laundry, shop, use public transportation, care for pets, play games on his computer, take walks around the neighborhood, and assist his disabled father.  AT 430-31.  He reported at the hearing that he does not need help with activities like bathing or getting out of bed, he helps with upkeep of his parents' home, cooks, does dishes, goes shopping with his mother, reads books, and uses a computer.  AT 51-58.

As to plaintiff's argument that the ALJ failed to consider the numerous laser eye surgeries plaintiff underwent related to his vision impairment, not only does the record indicate that those surgeries were intended to keep his vision from worsening – rather than to improve his vision – and to address symptoms of spots or floaters in his vision, but also that plaintiff's vision neither improved nor worsened as a result of those surgeries.  AT 477, 479, 488-89, 501-02, 517-19, 554-56, 611-15.  As a result, the ALJ's failure to explicitly treat these surgeries as a positive factor in his assessment, inasmuch as they show that plaintiff sought treatment to relieve the symptoms of his vision impairment, was at the very most harmless error, given the other reasons provided to support his determination.

Based on the foregoing, I reject plaintiff's arguments regarding the ALJ's assessment of his subjective complaints.

### 3.    Significant Number of Jobs in the National Economy

Lastly, plaintiff argues that, notwithstanding any other alleged errors, the number of jobs identified by the vocational expert are not sufficiently significant to carry the Commissioner's burden at step five.  As was noted previously, the vocational expert identified two jobs that plaintiff remains able to perform despite the limitations in the RFC, and testified to the existence of 8,500 and 5,200 jobs in the national economy for those two occupations, respectively, for a total of 13,700 jobs.[8]

Under the prevailing law of courts within the Second Circuit, a "'significant number' of jobs is 'fairly minimal.'"  *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015) (Suddaby, C.J.) (citing *Rosa v. Colvin*, 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2013)).  Indeed, numbers between 9,000 and 10,000 jobs "have typically been found to be sufficiently 'significant' to meet the Commissioner's burden."  *See Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177-78 (W.D.N.Y. 2018) (collecting cases); *Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868,

---

[8]      In his memorandum, plaintiff misstates that these total to 17,500 jobs.  Dkt. No. 14, at 21-22.

2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) (Suddaby, C.J.)

(finding that 13,891 jobs in the national economy constituted a significant

number, but remanding on other grounds); *cf. Hamilton*, 105 F. Supp. 3d at

231 (finding that 5,160 jobs in the national economy was not significant).

The number of jobs identified by the vocational expert was therefore legally

sufficient to meet the Commissioner's burden at step five.

Plaintiff further asserted at oral argument that, because the number

of suitable jobs was so low, the ALJ was also legally required to obtain

testimony from the vocational expert or elicit other evidence to establish the

number of those jobs available in the regional economy before finding there

were sufficient numbers of occupations plaintiff could perform.[9]  Plaintiff's

argument is not supported by legal precedent.  A review of the law reveals

no legal requirement that the ALJ elicit testimony regarding number of jobs

in the regional economy as a matter of course, and particularly not in

situations where there is testimony showing a significant number of jobs in

the national economy.  *See* 20 C.F.R. §§ 404.1566, 416.966 (indicating

that "[w]e consider that work exists in the national economy when it exists

---

[9]      Plaintiff nominally raised this issue in his brief, stating in a single sentence that
"[t]he VE did not provide testimony regarding regional numbers."  Dkt. No. 14, at 21.
Although not a fully fleshed-out argument, I find that plaintiff sufficiently raised this
argument in his brief to avoid a finding of waiver.

in significant numbers either in the region where you live *or in several regions of the country*") (emphasis added).  To illustrate, in *Hamilton*, this court recognized that the regulations require that a significant number of jobs must exist in the regional *or* national economy in order to support a step five finding; there is no regulatory requirement that the numbers must be significant both regionally and nationally.  *Hamilton*, 105 F. Supp. 3d at 230.  Indeed, it was expressly noted that "the fact that the local numbers are not significant does not matter if the national numbers are significant" and that "[i]t does not matter whether work exists in the immediate area in which a plaintiff lives."  *Id.* at 230 n.7.  Indeed, courts have not generally required testimony regarding regional or local numbers except in situations where the national number appears to be insufficient to show a significant amount of jobs.  *See Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *14 (N.D.N.Y. June 29, 2016) (Carter, M.J.) (finding remand warranted where the vocational expert's testimony appeared to suggest plaintiff could perform only a single job with national numbers of 8,404 and there were no state-wide job numbers provided to show whether the regional availability would otherwise be significant); *see also Sontz v. Colvin*, 15-CV-0708, 2016 WL 4444876, at *7-8 (N.D.N.Y. Aug. 23, 2016) (Suddaby, C.J.) (rejecting plaintiff's argument that the vocational expert

was required to provide evidence that the identified jobs existed in the regional or local economy because the vocational expert's testimony showed that those jobs existed in significant numbers in the national economy). Because, as was already discussed, the number of jobs in the national economy is within the range that has been found to be a significant number, there was no need for the ALJ to elicit testimony regarding the number of jobs in the local or regional economy.

Based on the foregoing, I reject plaintiff's argument that the ALJ erred at step five.

IV.   <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 17) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be DENIED, the Commissioner's decision be AFFIRMED, and plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      December 15, 2021
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge